Good morning, Your Honors. Joseph DeMott, on behalf of La Dell Grizzell and her three minor children. I'd like to reserve three minutes for rebuttal, please. The allegations in this case are harrowing. According to the complaint, the Grizzell children enrolled at San Elijo Elementary School through a program for homeless youth. They were the only black students in their respective classrooms, and they were repeatedly mistreated because of their race. Ultimately, the school district unilaterally disenrolled all three children over their mother's objection. Then, when Mrs. Grizzell sued the school district on the children's behalf, the children's claims were immediately dismissed under this court's decision in Johns v. County of San Diego, which categorically bars a parent from bringing a lawsuit on behalf of her own children unless she retains a lawyer. Johns is wrongly decided three times over. First, it defies 28 U.S.C. Section 1654, which broadly guarantees natural persons the right to proceed pro se. Second, the rule announced in Johns is unconstitutional, as it deprives minors of equal access to the courts and abridges parents' fundamental interest in the care, custody, and control of their children. And third, nearly three decades of experience have shown that Johns is bad policy, as it effectively bars the courthouse doors to indigent children whose parents are not fortunate enough to find pro bono representation. And to be fair to the judges who decided Johns, it was motivated by a noble goal, protection of a minor's legal rights. Johns rests on the premise that when minors have claims that require adjudication, and I'm quoting, they are entitled to trained legal assistance so their rights may be fully protected, end quote. The problem is there is no right to trained legal assistance in civil cases, and there are tens of millions of children in the United States whose families cannot afford a lawyer, and are simply not able to obtain free legal services, either because their families are slightly above the very low income threshold to qualify, or because the demand for free legal services, even for those who are indigent and qualify based on the income threshold, the demand far outweighs the supply for those services. And there's a bunch of evidence that we cited in our briefs, you know, recent scholarship and the like, that just makes clear the results of this bright line rule that children are always better off litigating with counsel or not litigating at all is to simply bar indigent children from the courts. We're bound as a three-judge panel. We're bound by prior three-judge panels. So there's nothing we could do. We can't just say we disregard. We're going to disregard Johns versus a county of San Diego or city. But, you know, the only thing we could do is, as a panel, sui sponte call for rehearing en banc, or, you know, say we're bound by Johns, and some other judge could try to call the case en banc. That's correct, Your Honor, and, you know, we'd love it if there were a way to distinguish Johns. When the court appointed us for purposes of this appeal, obviously we tried every which way to see if there was a way around it, and ultimately we just concluded that our duty of candor to this court as court-appointed counsel was to say we think Johns is binding. You know, that being said, we filed a separate motion for initial hearing en banc, which I understand, you know, wasn't granted, but we still would urge this panel. It's not being granted or denied, but... Right, but here we are. It's still pending. Right, exactly. So maybe you're, I mean, I understand the arguments you start out with, I mean, I guess could be framed as why we should call the case, ask the court to hear the case en banc. Is that right? Exactly, Your Honor. What we're asking for is for this panel to urge your colleagues to take this case up en banc or, you know, to urge the Supreme Court, failing that, to consider this rule. Well, Mr. DeMott, would it be fair to say that most circuits haven't aligned with your view of this? I mean, I know there's the Fifth Circuit, but in one of the footnotes in Raskin, it noted all the different circuit courts that have the Johns view of this. Isn't that fair to say? I think it's a lot more nuanced than that, Judge Sanchez. So I'd say Raskin obviously, you know, expressly rejects the Johns rule, but there are a number of other cases that we cited in our briefs. I mean, Tyndall v. Poltny High School out of the Second Circuit acknowledges that this rule, again, quoting, may undermine a child's interest in having claims pursued for him or her when counsel is, as a practical matter, unavailable, that this can force minors out of court altogether and result in unredressed violations of children's rights or interests. And so there the Second Circuit said, we're going to kind of cut back. We're going to say this rule should be applied gingerly, that it shouldn't be the sort of per se rule that there is in Johns. But that panel did acknowledge, you know, older Second Circuit precedent. So I'd say the Second Circuit has certainly cut back on this Bright Line rule. Illustra v. Mineo out of the Seventh Circuit, Adams, Exrill, DJW out of the Tenth Circuit both similarly said this isn't an ironclad rule, which is, again, different than the Johns rule that the district court applied here, you know, saying to Ms. Grisell, look, I think these are serious allegations. I think there's, you know, if this is something that's going on, this needs to be addressed. I'm dismissing this for nothing to do with the merits, but you just have to have a lawyer full stop. So I think also it's worth noting, and one of these decisions came down just on May 8th, and so it's not even in our reply brief. I'm happy to submit a 28-J letter if that would be helpful to the court. But it's Warner v. School Board of Hillsborough County, number 23-12408 in the Eleventh Circuit. It's an unpublished decision where this Eleventh Circuit panel acknowledges that they are bound by, again, old Eleventh Circuit precedent that is in line with Johns, but says, boy, there's some really strong arguments, statutory arguments, constitutional arguments, and policy arguments that this is wrong. And so, you know, there's a pending petition for en banc rehearing in that case. Also, the Sixth Circuit just in February in Maras v. Mayfield City School District Board of Education, number 22-3915, said, yeah, we have these thinly reasoned cases from a few decades ago that just sort of adopt this rule that the Tenth Circuit announced in 1986 with virtually no reasoning and that, you know, a couple of kind of thin reasons have been supplied for. But, boy, the Fifth Circuit's decision in Raskin, both the majority and the separate opinion, have a much more nuanced view of this, and we really think we should reconsider, but the claims there were moot, and so it was dismissed as moot. So, I mean, yes, there is a lot of older precedent out there that is, you know, more or less in line with Johns, but there's really a lot of momentum for reconsidering this. And I would just suggest that, you know, given three decades of experience with this rule, that it deserves a second look from the en banc court. Let me ask you this. You know, I think in some kinds of cases, I understand the argument very well. It kind of makes sense to me. Like, for example, in the special education kinds of cases, the parent has just as much right as the child to ensure that the children get a quality, you know, get the appropriate benefits of a special ed situation. But this case strikes me as kind of, you know, the classic kind of case where you'd want a lawyer. It's a civil rights case for damages, is what it is. It's complex federal court litigation. And, you know, any pro per who tried to take on a case like this would be facing tremendous odds. This is very complicated litigation. And, you know, I can see here, I mean, it makes sense to me that, you know, you need a lawyer. But I'm not going to dispute that, you know, it would be great if everyone could get a lawyer in this type of case. At least, you know, we do think that there is a constitutional right, and it's been a statutory right since the Judiciary Act of 1789. And it's similar to what the court held in Feretta, that if you ultimately decide you don't want a lawyer, that is your right. That being said, I would love to live in a world where everyone who had this kind of, you know, relatively complicated case could access free or low-cost legal services. That's simply not the world we're living in. And so what Johns does is it adopts a bright-line rule that says it doesn't matter if the parent, you know, decides that given her financial circumstances, given what happened to her children, she wants to do the best she can in court. Just as, you know, many adults pro se litigants, you could say the exact same thing. You could say this is a relatively complex case, you know, we would like there to be counsel here. And nevertheless, they have, in many instances, as this court well knows, they do proceed pro se. And so I think our argument is that as a matter of policy, which is primarily what Johns, you know, was decided on, it's not good policy to have a rule where tens of millions of minors and their parents just have no realistic option. It makes the perfect the enemy of the good. So I have a question. What limiting principle would you have? And Judge Piatt's mentioned some cases where it's allowed. I think Social Security benefits cases allow it too. And I'm just wondering, you know, how would you confine this rule? Sure. I mean, I don't think you would want the rule to be that any parent can represent their children under any circumstances. And I realize there's an exception where the parents have rights in the action. Could your client have figured out a way to assert her own rights in this action and then be able to represent the children? No, I don't think so, Your Honor, because these are the children's claims. And the statute, 28 section – 28 U.S.C. section 1654, as the First Circuit unanimously held, everyone there, both the majority and the separate opinion held, that is a statutory right that belongs to mine. If it isn't the children's claims, I mean, doesn't – I mean, you're saying it's because the right to free public education – the right to public education in the California Constitution belongs only to the children, not – No, no, no, no. I'm not saying that. What I'm saying is there's a federal statutory right in section 1654 that allows any party to litigate pro se or to litigate through counsel. And just as with every other federal right, when you have a minor – and you do look to state law to determine, you know, who is a minor for these purposes, right? In California, someone could be emancipated as young as 14, and then they could proceed pro se on their own behalf. In some states like Mississippi, the age majority is 21. So there is, like, a limited role for state law insofar as you're determining, you know, who can just show up on their own behalf. But if we're in a situation where it's a minor who can't appear on their own behalf, all of their rights are wielded by the parents. I mean, that's true – the right to demand a jury trial or to waive that right. But then it sounds like you aren't placing a limiting principle to this. And, I mean, even Raskin was more restrained than what I'm hearing you argue because Raskin was discussing it in the context of whether federal or state statute wanted to create these carve-outs for specific situations. But it sounds like what you're saying is under the California Family Code, any claim that a minor could assert should be asserted – assertable through the guardian or parent. We're saying under federal law. I mean, under both this federal statute and under the Constitution, state law has a really limited role to play in determining, you know, who counts as a minor. But apart from that, this is a federal right, and it's a fundamental right that the founders prized and enshrined in the Judiciary Act of 1789. And so we're saying parents can assert that on behalf of their minor children, but two limiting principles. First of all, this is limited to natural persons, and so it would not affect all of the separate law about corporations and estates and the need for those non-natural legal entities to be represented by counsel. And the second limiting principle is that the court still has a role for oversight. And so, you know, it's well established that – and there are cases we cite in our papers – that if a parent is just waiving a minor's right willy-nilly without getting anything in return, for example, the right to a jury trial, the court may step in and say, hold on, we have a role to play here in ensuring that the minor's rights are protected, and we're not going to allow you to waive that or agree to a settlement that the court says is not in the minor's interests. The court does have a special oversight role in cases involving minors. I would submit that to the extent you have a situation where the parent is doing something that the court thinks is really off the wall – I mean, we have cases where there's a conflict of interest between the parent and the child – the court can certainly step in there. But what we're saying is the general presumption under the Constitution and under this Federal statute is minors have a right to proceed pro se if, under State law, the person is too young or what have you. Then the parent can exercise that right on the minor's behalf, just as the parent can exercise every other right that a minor enjoys under Federal law. And there's just no logical or legal basis for carving out this right and saying the parent gets to choose, do you bring a lawsuit in the first place? How do you conduct this lawsuit? Are we going to have a jury demand? Are we going to agree to settle, et cetera? The parent is charged as their child's guardian with making these critical decisions. And what Johns does is it just applies an irrebuttable presumption that, no, the court knows best. It's never in a minor's interest to come into court pro se with their parent exercising that Federal statutory and constitutional right. I see that my time's up, so I'll save the last three minutes for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Jennifer Creighton on behalf of San Marcos Unified School District and San Elijo Elementary School. I would like to preface my comments just taking issue with the characterization of this matter as one with a school district discriminating against and violating the civil liberties of three children who are described as destitute and without the ability to secure counsel and then taking a tactical advantage by bringing a motion for lack of capacity in order to have the case just tossed out because that's not exactly any way that this happened. The record does not support that conclusion. If we go back to this, this is a McKinney-Vento matter, and this family applied for educational rights with the district pursuant to that program. Once they secured housing and left the state of California, the district notified them that their McKinney-Vento status was ending for that year. They were no longer homeless. They were not even in the state, and they were expecting that San Marcos Unified School District would continue to educate them forever while they lived in another state. The record does not support a conclusion that Ms. Grizel is destitute or homeless or poor or unable to secure an attorney or that she tried to secure an attorney. In fact, she filed this appeal before the deadline imposed by the district court to come back to court with an attorney and file an amended complaint. She has a history of filing actions in pro se in the court and frequently makes allegations such as these that are not founded. So the history of this case is not the test case that should determine whether or not Johns is wrong. As my colleague aptly indicated, Johns can't be overturned by this panel unless en banc review is granted, and there are many, many reasons why it shouldn't be. As Your Honor Sanchez pointed out, there are many, many circuits that have felt that Johns is appropriate. There are many, many public policy reasons why Johns is sound. Counsel began to discuss some of the oversight responsibilities of the court when a matter is handled on behalf of a minor, with or without an attorney. The court has oversight as to whether or not a compromise of a claim is appropriate and can step in if there is something that doesn't appear to be appropriate. If the court overturned Johns and Ms. Grizel can represent her minor children in court without the assistance of an attorney and she waives that jury trial by failing to deposit her fees on time or she fails to oppose the motion for summary judgment or she doesn't designate an expert when she's supposed to, is the court then going to step in and have its own conflict between its duty of impartiality to coming in and trying to manage the litigation being handled by an individual who doesn't know what they're doing in order to also meet the court's obligation of fidelity and responsibility toward the minor. It puts the court in an untenable situation. The court has also found that there are many, many reasons why an attorney should be handling these types of cases. As Judge Paez noted, this is a complex case. It was a 117-page complaint with 40-something causes of action. And it is not a case that someone like Ms. Grizel can handle on behalf of three children. We have a number of reasons why all of the other circuits, not all of them, but the vast majority of the other circuits are saying that it is not appropriate for a parent to come in and not only serve as the guardian ad litem but also the attorney. The interests of the children have to be protected by the court. And the appellant suggests that the interests of the children are being cast aside by Johns because they are lacking the ability to obtain counsel. So let me ask you this. Counsel seems to be arguing that what we've done is we've just adopted a bright-line rule. If you're a minor under California law, parents cannot represent the children in court. The children can't proceed pro se. They need guardian ad litem or a parent or something. And they need an attorney, bottom line, any case. And I'm not even sure in the Ninth Circuit how we handle Social Security cases. But counsel seems to be making a nuanced argument, which I take, that there may be certain circumstances where the parent's claim is coincidental or even derivative, I guess coincidental, of the child's claim. I've made the reference to special education. But there could be other instances where that takes place. Why shouldn't the court take another look at the hard and fast rule to see if there's a more nuanced approach that the court should be taking in these cases? In my view, this is a tough case because, and your point at the very beginning, that this may not be the best case to reexamine the rule because this is a hard case. It's a claim for damages under Section 1983. And that's tough litigation even for lawyers. But what's wrong with a more nuanced approach to this? Well, Your Honor, first of all, there is the ability, as you noted, with Social Security and administrative proceedings for parents to bring claims for benefits because of the connection between the benefit to the parent as having responsibility for caring for that minor. There are opportunities for parents to bring claims under the IDEA in the special education context when their claims are interspersed with their children's. For example, if the child had to have a nonpublic placement and the parent had to incur all of those costs, the case law says that that parent can then bring a claim to recover those damages. But in this particular case, Ms. Griselle is claiming that, for example, a teacher used a pejorative emoji on a board trying to teach a sight word and that that was harassing to her child. She alleges that other children bullied some of the minor children because they were very good at athletics. These types of claims, they're not interspersed with Ms. Griselle's claims. She had no claims. The district court judge asked her at the hearing whether any of these claims were her claims, and she admitted that they were not. And so the Johns case is directly on point with this case. And, in fact, in Johns, the district court allowed the plaintiff 30 days to find an attorney and come back, and in our case the district court gave her twice that amount of time. And at no point has she ever said, I talked to 15 attorneys and nobody would take my case. I went to the ACLU and they wouldn't take my case. There's no evidence of that in the record. There are many situations where indigent plaintiffs with good cases can find lawyers, whether they're contingency-based, whether they're pro bonos, whether they are volunteer lawyers or programs like the ACLU or the NAACP. There is no evidence in this record whatsoever that Ms. Griselle availed herself of any of those opportunities, and the fact that she has so many prior cases that she's filed pro se suggests that she had no intention of doing so, which is supported by the fact that she filed her notice of appeal within 10 days or so of the district court's admonishment that she had 60 days to file an attorney. So the very reason why these children need to be represented by competent counsel exists, and this district court judge was attempting to protect those children and not get into a conflict situation like I just discussed. I mean, there are dozens of reasons why a parent should not be able to file and proceed with a claim on behalf of minors. There are conflicts between parents, and the children become pawns, and one parent files against the other. We have laws prohibiting people from getting involved in things where their emotions run too high and it clouds their judgment. Just like a person can't operate on their own child. They might have Googled it and think they know how to do it, but they're not a licensed medical provider. They can't do it. There are so many reasons, and many of them are put forth in all of the papers for your consideration that this would just be a very bad decision to overturn Johns, and therefore we're requesting that the court not entertain the motion for en banc review. So the facts in this case occurred in part over the COVID period, and there was long-distance learning going on. So what's so problematic about her living in Colorado but doing the long-distance learning during COVID? I mean, everybody was doing that. Yes, Your Honor, that's true. There was nothing wrong with it. She was not canceled from the program. But you're arguing that these facts are bad. She moved out of the district. And I'm just wondering, I mean, since these allegations happened during COVID, why living in the district makes it a bad case? So under McKinney-Vento, if you establish that you're without appropriate residence, you can apply for an education in that district where you're applying. And pursuant to the statute, that lasts for the year, and you reapply the following year. People who are homeless tend to have transitory living situations. So when the district was informed that she was living out of state, she received the customary notice that you appear to be out of the state, you have to reapply if you're back in the district. The district receives funding, state and federal funds, to educate children within its district, and it can't educate people all over the country because, at one point, they did live in San Marcos. So she could have, at the end of the year or over the summer, reapplied for residency pursuant to the McKinney-Vento Act for the following school year. The notice, I believe, went out in May. The school year ended sometime in June. The children were eligible to continue the school year. They were just notified that if they were going to continue the following year, they had to reapply. So the characterization of this is they're getting kicked out of the school. They weren't kicked out of the school. They just needed to reapply, and they failed to reapply? They were notified of the requirement that their eligibility would be ending at the end of the year. They never tried to reapply. This lawsuit was filed, and, as far as we know, Ms. Grizzell has stayed in Colorado. And that notification applies to everyone annually, whether or not they've moved out of the district? Every McKinney-Vento-eligible student, yes. All right. I guess I have nothing further. If you have no further questions, thank you. Thank you, counsel. Mr. DeMott, I'll give you two minutes. Thank you, Your Honor. I'm struck not only by what I heard from the district, but perhaps even more by what I didn't hear. I heard no argument that Section 1654 doesn't apply to minors. I heard no response to our constitutional arguments. And I heard no real attempt to defend the reasoning of Johns, particularly in a world where so many Americans just realistically cannot obtain legal representation. I think all of that is extremely telling. Johns just doesn't withstand scrutiny. As for my colleague standing up and asserting disputed facts that aren't in the record, we're at the pleading stage. The allegations govern. I don't know where this thing about so many prior cases is coming from. That's nowhere in the record of the briefs. I will say that counsel has not accurately stated what the school district did at ER 252-252. The school district expressly declined to find her ineligible. It said it was not in her children's best interests and they were being disenrolled. So it says, The purpose of this letter is to notify you that the district has determined that it is in the best interest of your three children to be disenrolled from the elementary school. It acknowledged that there's a statutory presumption that the mother decides what's in the children's best interests and it found that was rebutted. It didn't make any of these findings about where they lived or their eligibility. So, again, as for whether this is a test case, the district court blocked them at the threshold. The district judge said, My hands are tied. See Johns. You have to find a lawyer. So there was no reason for her to build a record of how many attorneys she spoke to or what her financial status was. I mean, I would note she not only enrolled her students through this program for homeless youth, but she has established and been allowed to proceed in form of papyrus here. So the notion that, you know, she has plenty of resources and just didn't want a lawyer strains credulity. Lastly, they do not need to be her own claims. They are the children's claims, and she is empowered to vindicate them, just as she is empowered to vindicate the children's other federal rights. Johns should be overruled. Indigent children deserve better. Thank you, Your Honor. Well, thank you, and thank you for accepting the appointment to make the arguments. It was a privilege, Your Honor. Thank you. Thank you. Okay. Griselle v. San Elido Elementary School in San Marcos School District is submitted and will take up total law v. U.S. Securities and Exchange Commission.
judges: WARDLAW, PAEZ, SANCHEZ